Aida I. SANTIAGO, Plaintiff,

v.

EXECUTIVE AIRLINES, Defendant.

No. Civ. 95–2346(RLA).

United States District Court,
D. Puerto Rico.

Feb. 26, 1999.

Miriam R. Ramos–Grateroles, Bayamon, PR, for plaintiff.

Vicente J. Antonetti, Goldman Antonetti & Cordova, San Juan, PR, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT AND DISMISSING THE AMENDED COMPLAINT

ACOSTA, District Judge.

Plaintiff instituted this action alleging that defendant refused to provide her with reasonable accommodation and dismissed her from employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.* Additional claims were also asserted under various Puerto Rico labor statutes pursuant to the supplemental jurisdiction provisions.

For the reasons further elaborated below, we find that plaintiff's federal claim is defective and must be dismissed. Under these circumstances, we decline to exercise supplemental jurisdiction over the remaining claims and proceed to dismiss them without prejudice.

### I. THE FACTS

We find that the essential facts to the controversy as presented are not in dispute. It is the parties' respective perception of the facts which are in conflict.

1. EXECUTIVE AIRLINES, INC. ("EXECUTIVE") is a corporation organized under the laws of the State of Delaware, doing business in the area of air transportation under the name of AMERICAN EAGLE.

2. EXECUTIVE is a "covered entity" for purposes of the ADA.

3. Plaintiff AIDA IVELISSE SANTIAGO began to work as a Flight Attendant

for AMERICAN EAGLE effective **April 15, 1993.**

4. The employment was on a probationary basis for eight (8) months from the date of hire, i.e., until **December 15, 1993.**

5. When she began working as a Flight Attendant at EXECUTIVE, plaintiff received training at AMERICAN AIRLINES' LEARNING CENTER.

6. Upon her return from AMERICAN AIRLINES' LEARNING CENTER, plaintiff received additional orientation by EXECUTIVE in San Juan on many matters pertaining to the probationary period, employment conditions, company rules, benefits and company policies.

7. Plaintiff received a copy of the company handbook and policy manual during her orientation at EXECUTIVE.

8. Plaintiff read the company handbook and policy manual, including regulations regarding the use of travel privileges conferred by the employer.

9. As part of her employment privileges with EXECUTIVE, plaintiff was authorized non-revenue travel privileges for her spouse, parents and children.

10. Plaintiff only listed her parents as beneficiaries of the reduced travel rates. This designation was never amended.

11. In the form listing her parents as dependents for reduced travel rate signed by plaintiff on April 19, 1993 she acknowledged that the travel privileges had been explained to her and certified that:

[A]llowing **persons other than herein specified** to use my transportation privileges contrary to Company, CAB and/or participating Airlines regulations, **is subject to immediate discharge** and to all penalties provided by law. I understand that my travel privileges **have been explained to me according to the Employee Handbook,** and will start after completion of six months of employment.

(Emphasis ours).

12. During her probationary period as a Flight Attendant in 1993, plaintiff was absent from work on 17 occasions.

13. Absences due to illnesses were attributed to an upper respiratory infection or ear infection related to a cold.

14. Plaintiff was counseled by EXECUTIVES on several occasions about her absenteeism and about the importance of taking care of her health to avoid colds and nagging illnesses that could cause absences.

15. On December 2, 1993, near the end of her probationary period, plaintiff met with her supervisors who advised her that she had not passed her probationary period and would be dismissed as a Flight Attendant.

16. As grounds for dismissal the termination letter indicated "that your attendance during your probationary period has not met Executive Airlines minimum standards."

17. Plaintiff sought and obtained a meeting on **December 14, 1993** with CURTIS A. REIMER, defendant's Vice–President to seek review of her dismissal.

18. At the meeting with MR. REIMER plaintiff argued that her absences during the months of August, **October and November 1993** were related to a condition called *otitis media.*

19. At the meeting plaintiff also advised that she could continue to fly only in pressurized cabins and requested to be scheduled as Flight Attendant exclusively in that type of aircraft.

20. According to plaintiff, the only limitations resulting from her *otitis media* condition are her inability to: fly in unpressurized aircraft and helicopters, scuba dive, swim underwater and perform some occasional house chores.

21. Plaintiff was assigned by EXECUTIVE to a part-time ramp escort position effective **December 21, 1993** and reported to work on **December 23, 1993.**

22. Upon assignment to a part-time ramp escort position, plaintiff was paid for the period from December 2 to December 23, 1993 and given credit for the seniority that she had earned as a probationary Flight Attendant.

23. During her first three (3) weeks as ramp escort plaintiff was late for work on three (3) occasions on an 11:00 a.m. shift.

24. Plaintiff was late for work on another two (2) occasions and was absent twice during the first five months of **1994.**

25. On **May 23, 1994** EXECUTIVE issued plaintiff a First Advisory stating that her attendance record was unsatisfactory and must be corrected.

26. Plaintiff filed a **charge of disability discrimination** with the PR–DOL on June 14, 1994 asserting defendant's failure to provide her with a reasonable accommodation.

27. Between May 26, 1994 the date of her First Advisory and **January 24, 1995** plaintiff was absent on **seven** other occasions, reported late on one occasion and failed to call in prior to her scheduled starting time to report an intended absence on one occasion.

28. On **January 24, 1995** EXECUTIVE issued plaintiff a Second Advisory stating that her attendance record continued to be unsatisfactory and must be corrected. Plaintiff was also admonished that failure to take corrective action would result in termination.

29. On **April 4, 1995,** acting on a report from a fellow employee, EXECUTIVE notified plaintiff that she would be withheld from service with pay pending the investigation of her use of nonrevenue travel privileges.

30. Plaintiff was **discharged from her employment effective April 19, 1995** for having violated the company's travel policies on repeated instances in 1994 by authorizing a man who was not her husband to fly with her as her spouse on a nonrevenue ticket.

31. At the time plaintiff used the nonrevenue vouchers for JOSE COLON CLAUDIO she was not legally married to him.

## II. ALLEGATIONS

Plaintiff challenges two different adverse employment determinations. First, she argues that her dismissal as a Flight Attendant in December 1993 was based on a disability and/or being perceived as disabled by her employer due to her ear condition. Further, she contends that she was denied reasonable accommodation which she was entitled to by law.

Secondly, plaintiff attacks the legality of her termination from employment as part-time ramp escort in **1995.** She claims this dismissal was in retaliation for having filed a discrimination claim with the PR–DOL. The sequence of events in this regard is of primary importance in attempting to sort out the various claims asserted.

## III. SUMMARY JUDGMENT

The purpose of the summary judgment mechanism is to avoid unnecessary trials by ascertaining whether material facts are in dispute. In order to prevail at this stage of the proceedings defendant herein, as movant, must establish the absence of relevant facts in controversy and its entitlement to a judgment based on the applicable law. *Feliciano v. State of R.I.,* 160 F.3d 780 (1st Cir.1998), *Soto–Ocasio v. Fed. Express Corp.,* 150 F.3d 14 (1st Cir. 1998). Plaintiff, on the other hand, cannot limit her role to pointing to facts in controversy but must also present adequate evidence substantiating each fundamental component of her claim. That is, plaintiff must have available sufficient evidence for a reasonable fact-finder to conclude that she has met her burden of persuasion regarding all the essential elements of her

cause of action. *Hodgens,* 144 F.3d at 158 and *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

Summary judgment may be appropriate even in cases involving discriminatory *animus* when the evidence of motive adduced by the party opposing the motion hinges on unsupported conjectures. *Hodgens,* 144 F.3d at 167; *Fennell,* 83 F.3d at 535; *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994); *Medina Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### IV. ADA

■ The ADA prohibits discrimination in employment grounded on disability. In order to qualify for the protection offered by ADA plaintiff bears the initial burden of establishing (1) that she suffers from a "disability" within the meaning of the Act; (2) that she is able to perform the essential functions of her position with or without reasonable accommodation; and (3) that the employer's actions were based in whole or in part on her disability. *Feliciano v. State of R.I.,* 160 F.3d at 783; *Soto–Ocasio v. Fed. Express Corp.,* 150 F.3d at 17; *Laurin v. The Providence Hosp.,* 150 F.3d 52, 56 (1st Cir.1998); *Criado v. IBM Corp.,* 145 F.3d 437, 441 (1st Cir.1998).

Plaintiff bears the burden of demonstrating that in **December 1993** she could perform the essential functions of her position as a Flight Attendant with or without reasonable accommodation. *Soto–Ocasio v. Fed. Express Corp.* Additionally, as part of her burden she must also point to the existence of a reasonable accommodation, i.e., identify available positions that she was qualified to perform. The existence of alternate vacant positions must be established by plaintiff based on admissible evidence not hearsay. *Feliciano v. State of R.I.,* 160 F.3d at 787.

### A. DISABILITY

#### 1. Ear Condition—Major Life Activities

We shall first examine plaintiff's proffered disabling condition to determine whether or nor it meets the applicable legal requirements.

Disability is defined in the statute as a "physical or mental impairment that substantially limits one or more of the major life activities". 42 U.S.C. § 12102(2)(A). The phrase "major life activities" includes functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1998).

ADA affords protection only if the limitations imposed by the condition are substantial. *See Arnold v. United Parcel Service, Inc.,* 136 F.3d 854, 859 (1st Cir.1998). Therefore, only those impairments which prevent or limit a person's ability to perform major life activities will be considered disabling under the Act. 29 § 1630.2(j) (1998).

■ The only condition asserted by plaintiff in support of her purported disability is *otitis media.* Plaintiff concedes that the middle ear infection which she apparently had in 1993 while working as a Flight Attendant subsided. Only the *sequelae* from this condition has remained which she claims prevents her from flying in unpressurized aircrafts. No evidence has been presented by plaintiff to suggest that this particular condition substantially limits her hearing ability or any other major life activity as contemplated by ADA.

Under these circumstances, we find that plaintiff's ear condition is not of such magnitude as to constitute a disabling condition under ADA.

#### 2. Ear Condition—Major Life Activity of Working

Additionally, those impairments which substantially affect the "major life activity of working" may also be deemed a disabili-

ty. In this regard, the regulations provide as follows:

> The term "substantially limits" means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities. The inability to perform a **single, particular job** does not constitute a substantial limitation in the major life activity or working.

29 C.F.R. § 1630.2(j)(3)(i) (1998) (emphasis ours).

█ The fact that an individual is unable to perform a particular or specialized job for his employer does not substantially limit his ability to work for purposes of the statute. *See McKay v. Toyota Motor, Mfg., U.S.A, Inc.,* 110 F.3d 369 (6th Cir. 1997) (limitations caused by carpal tunnel syndrome did not render plaintiff disabled within the meaning of ADA since condition only prevented her from performing limited type of work). The resulting restriction must apply to either a class of jobs or range of jobs in various classes. EEOC Interpretive Guidance on Title I of the American with Disabilities Act, app. to 29 C.F.R. pt. 1630. *See also,* 1 Henry H. Perritt, Jr., Americans with Disabilities Act Handbook, (3rd Ed.) § 3.3 at 43–47.

As plaintiff herself acknowledged during her deposition, the limitations imposed by her condition are limited to the inability to fly in unpressurized aircraft and helicopters, scuba dive and underwater swimming. No other physical or mental condition has been cited in support of her discrimination claim. Plaintiff was otherwise physically qualified to perform the duties of a Flight Attendant. As a matter of fact, she petitioned to be allowed to continue working as a Flight Attendant conditioned upon flying only in pressurized aircraft. Furthermore, plaintiff's ability to fly pressurized flights is further evidenced by her use of travel privileges while employed as a ramp escort.

Plaintiff has not cited any other jobs which she has been rendered unfit to perform due to her condition. Therefore, we must conclude that she has failed to establish that she has any substantial limitations in her "major life activity of working."

### 3. *Qualified for Position*

Assuming that plaintiff was disabled within the scope of ADA, she still bears the burden of proving that she was able to perform the **essential functions** of her position with or without reasonable accommodations. *Soto–Ocasio v. Federal Exp. Corp.,* 150 F.3d at 18–9; *Arnold v. United Parcel Service, Inc.,* 136 F.3d at 861.

█ The Job Description for AMERICAN EAGLE's Flight Attendant position, which plaintiff acknowledged having received, listed a series of ESSENTIAL JOB FUNCTIONS which specifically included the ability to fly in unpressurized aircraft. In pertinent part the document reads:

> Must be able to perform the following functions:
>
> • Perform flight attendant duties which may require up to eight hours of standing, and up to twenty (20) take-offs and landings in pressurized and/or **unpressurized** cabin environments.

(Emphasis ours).

We reject plaintiff's self-serving argument that this requirement was not essential to her position as Flight Attendant. The undisputed evidence in the record points to the fact that EXECUTIVE had a limited number of pressurized airplanes servicing this area. In the event that there was a last minute need to substitute the aircraft due to mechanical defect or other scheduling situation, there was no guarantee that the replacement assigned would have a pressurized cabin.

Thus, we conclude that the ability to fly in both types of airplanes represented a fundamental condition for the position of Flight Attendant with EXECUTIVE. Since plaintiff did not meet this essential

job requirement she has failed to meet the second prong of her burden under ADA.

#### 4. *Perceived as Disabled*

■ Plaintiff further claims that she is entitled to relief because she was "perceived" as disabled by her employer. Persons who do not have a disability within the meaning of ADA may still qualify for its protection if they are **regarded** by the employer as having such an impairment. *See Cook v. State of R.I. Dept. of MHRH,* 10 F.3d 17 (1st Cir.1993) ("morbidly obese" employee). This may occur when the individual does not have a substantially limiting impairment but is treated as if he did in his place of employment. The statute specifically provides that disability also includes "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(C), 29 C.F.R. § 1630.2(1) (1998).

In this regard, the EEOC Interpretive Guidance pertaining to 29 C.F.R. § 1630.2(1) explains:

Therefore, if an individual can show that an employer … made an employment decision because of a perception of disability based on "myth, fear or stereotype," the individual will satisfy the "regarded as" part of the definition of disability if the employer cannot articulate a non-discriminatory reason for the employment action, an inference that the employer is acting on the basis of "myth, fear or stereotype" can be drawn.

Plaintiff carries the burden on this issue. She must begin by establishing that the employer perceived an impairment which substantially limits a major life activity. John M. Vande Walle, Note, *In the Eye of the Beholder: Issues of Distributive and Corrective Justice in the ADA's Employment Protection for Persons Regarded as Disabled,* 73 Chi.–Kent L.Rev. 897, 910 (1998). If the limitation is on the major life activity of working, plaintiff must show significant limitation to jobs in general and not to a particular type of employment. In other words, the disability as perceived must bar plaintiff from performing a wide range of jobs. Plaintiff may succeed if she "shows that the impairment as perceived would restrict [her] from a class of jobs or a broad range of jobs." Id. at 915.

As previously indicated, the only limitation in plaintiff's case is inability to fly in unpressurized airplanes which does not rise to the level of "substantial" limitation of a major life activity as required by the statute inasmuch as it does not prevent her from performing all jobs except those in unpressurized cabins, flying helicopters and scuba diving.

An impairment that fails to meet the substantially limiting test when it is an actual impairment will not suddenly become substantially limiting merely because it is perceived.

Vande Walle at 918.

Again we find no evidence to justify plaintiff's allegations that she was perceived as disabled in her employment.[1]

#### 5. *Accommodation*

■ Assuming *arguendo* that plaintiff carried her initial burden of establishing that she was disabled within the meaning of the statute, she still has to prove that there were reasonable accommodations available which would have allowed her to continue working and which her employer refused to provide. *See Feliciano v. State of R.I.,* 160 F.3d at 785 (plaintiff's burden to identify available positions which he/she is able to perform).

Plaintiff challenges her appointment as a part-time ramp escort as not being in compliance with defendant's duty to provide her with reasonable accommodation.

Defendant has furnished undisputed evidence to show that given the limited num-

---

**1.** In this regard it is important to note that the uncontroverted evidence in the record shows that plaintiff's termination as a Flight Attendant and reassignment to a ramp escort position was due exclusively to her voluntary disclosure that she was unable to continue performing in her current position **not** from any perceived disability by her employer.

ber of airplanes with pressurized cabins and the desirability of these planes by Flight Attendants granting plaintiff the opportunity to work only in pressurized airplanes would have encroached on the vested rights of other Flight Attendants with more seniority than plaintiff. As pointed out by the Court of Appeals, an employer's obligation does not extend to contravening rights secured by other employees through a collective bargaining agreement. *Feliciano v. State of R.I.*, 160 F.3d at 787 ("an employer is not required to violate the provisions of a collective bargaining agreement or the rights of other employees in seeking such reassignment [accommodation].")

Furthermore, unforeseen circumstances may force last minute changes from a scheduled pressurized flight for an unpressurized one which requires that assigned crews be qualified to work in both. Therefore, plaintiff's demand for this particular accommodation was not viable.

Lastly, plaintiff has failed to present evidence to rebut defendant's claim that her part-time ramp escort position was the only one available for her at that time. No particularized showing has been made as to what specific positions were open to a person with her qualifications and seniority and were refused.

Accordingly, assuming that plaintiff was entitled to accommodation under ADA, we find the appointment to a part-time ramp escort sufficient under the statute.

### 6. Conclusion

The uncontroverted evidence in the record establishes that plaintiff did not have a substantial limitation on a major life activity nor was she regarded as disabled by defendant. Additionally, assuming that she was disabled within the meaning of ADA defendant did provide her with a reasonable accommodation.

### B. RETALIATION

Plaintiff further alleges that her termination from employment as a ramp escort in **April 1995** was motivated by her filing of an ADA discrimination claim before the PR–DOL. Pursuant to 42 U.S.C. § 12203(a), retaliatory dismissals are also actionable under ADA.

■ The analysis established under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) utilized for retaliation claims in Title VII actions has been applied to ADA suits. *Champagne v. Servistar Corp.*, 138 F.3d 7, 12 (1st Cir.1998). Thus, in this particular case, absent direct evidence of discriminatory *animus*, plaintiff must initially establish a *prima facie* case of retaliation by showing that: (1) she filed a discriminatory claim; (2) she was terminated from employment; and (3) there is a causal connection between these two events. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43 (1st Cir.1998); *Hodgens*, 144 F.3d at 161; *Champagne*, 138 F.3d at 12 n. 5; *Fennell*, 83 F.3d at 535; *Hoeppner v. Crotched Mountain Rehabilitation Ctr.*, 31 F.3d 9, 14 (1st Cir.1994). Thereupon, the "burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." *Fennell*, 83 F.3d at 535; *Byrd v. Ronayne*, 61 F.3d 1026, 1033 (1st Cir.1995). In the event that defendant is able to proffer such an explanation "the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory *animus*." *Id. See also Champagne*, 138 F.3d at 2–13; *Grant v. News Group Boston, Inc.*, 55 F.3d 1 (1st Cir.1995).

In this case the burden of persuasion remains with plaintiff at all times. *Carey v. Mt. Desert Island Hosp.*, 156 F.3d 31, 34 (1st Cir.1998). *See Provencher v. CVS Pharmacy, Div. Of Melville Corp.*, 145 F.3d 5, 10 (1st Cir.1998) ("plaintiff retains the ultimate burden to show that he has

been the victim of intentional discrimination.")

In a summary judgment setting the court may dispense with the procedural niceties of the burden-shifting scheme and "focus instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory *animus*." *Fennell*, 83 F.3d at 535. We must examine the evidence regarding pretext and discriminatory *animus* to determine whether the relevant facts on these particular factors are in controversy. *Id.* (citing *Mesnick v. Gen. Electric Co.*, 950 F.2d 816, 827 (1st Cir.1991)). Therefore, plaintiff must "present a genuine issue of material fact regarding the existence of a causal connection between [plaintiff's complaint] and her subsequent discharge." *Hoeppner*, 31 F.3d at 14. The standard ruling on a summary judgment petition is whether or not a reasonable trier of fact could find for plaintiff based on the evidence proffered. *Id.*

A party opposing a summary judgment may not rely on mere allegations or speculations to prove motive. Rather, plaintiff must come forth with sufficient particularized evidence and detailed facts to raise an inference of discriminatory *animus* in order to meet her burden of proving causation. *Hoeppner*, 31 F.3d at 14.

There might be an overlapping of the evidence of discriminatory *animus* utilized by plaintiff at the prima facie stage to establish causal relationship and to prove pretext. *See Carey v. Mt. Desert Island Hosp.*, 156 F.3d at 34 (plaintiff "may rely on the same evidence to prove pretext and discrimination"); *Byrd*, 61 F.3d at 1033 ("for the most part, [plaintiff's] retaliatory discharge claim rests on identical inferences of pretext".)

The first two steps in our analysis are not in dispute. Plaintiff filed a claim with the pertinent local agency on **June 14, 1994** charging defendant failed to provide her with a reasonable accommodation under ADA. Thereafter, she was dismissed effective **April 19, 1995**. Defendant has articulated a legitimate non-retaliatory reason for plaintiff's discharge from employment. She was found to have violated applicable company rules regarding travel privileges on various occasions. In order to prove the necessary causal nexus plaintiff has alleged that defendant engaged in a harassment campaign prompted by her claim. These same events also form the basis of plaintiff's arguments charging that the reason proffered for her dismissal was pretextual. Accordingly, we will examine the circumstantial evidence purportedly indicative of discrimination to also determine the issue of pretext.

Defendant having articulated a legitimate, non-retaliatory reason for plaintiff's discharge "we arrive at the dispositive question: whether [plaintiff] has, on the summary judgment record, established a genuine issue of fact that (1) [defendant's] ... reasons were a pretext and (2) her discharge was in retaliation for her reports of ... harassment." *Fennell*, 83 F.3d at 536.

However, it is not enough for plaintiff to undermine the veracity of the grounds proffered by defendant for the adverse action. Plaintiff must also present sufficient evidence for the trier of fact to find that the real reason behind the employment decision was based on an impermissible discriminatory motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Carey v. Mt. Desert Island Hosp.*, 156 F.3d at 34; *Hoeppner*, 31 F.3d at 17.

Furthermore, plaintiff cannot merely show that retaliation was one of the elements taken into consideration by defendant for her dismissal. In order to prevail, plaintiff must also set forth sufficient facts to reasonably infer that retaliation was "the" motivating factor for her termination. *See Provencher*, 145 F.3d at 10 ("liability could only exist if ... retaliation was the reason behind [plaintiff's] discharge, but not if retaliation was a mere

factor among many.") It is plaintiff's duty to set forth sufficient facts to establish a causal link between the filing of her complaint with the PR–DOL and her termination from employment. *Hernandez–Torres v. Intercontinental Trading.* Our role is to determine whether "a reasonable fact finder could conclude that plaintiff was terminated as a result of having filed a discrimination claim". *Byrd,* 61 F.3d at 1033

In attempting to prove pretext, plaintiff may question the veracity of the proffered reasons or present sufficient evidence for the trier of fact to conclude that it was an excuse intended to camouflage its discriminatory motive. *Hodgens,* 144 F.3d at 168; *Champagne,* 138 F.3d at 13 (quoting *Mesnick v. General Elec. Co.,* 950 F.2d 816, 824 (1st Cir.1991)).

Additionally, the context and sequence of events in which the adverse decision is taken are relevant to a ruling on a pretext issue. *Hodgens,* 144 F.3d at 169; *Champagne,* 138 F.3d at 13.

### 1. Reason for Termination

██ Plaintiff concedes the underlying facts leading to her termination, i.e., utilizing a travel pass with a male companion while not married to him. She argues, however, that her companion was her common law husband and that the airline's regulations do not require that she be legally married to qualify for these privileges.

We decline to follow plaintiff's reasoning. In the form identifying her parents as her only dependents entitled to travel benefits plaintiff certified to having been explained the applicable requirements for the travel privileges. Additionally, in that same document she acknowledged that permitting persons **not** listed therein to

take advantage of those benefits would subject her to "immediate discharge". During plaintiff's employment with EXECUTIVE, she never included MR. JOSE COLON CLAUDIO, her traveling companion, as a beneficiary to those privileges.

Thus, we find that plaintiff was clearly advised not only of the limitations imposed on her traveling privileges but more importantly, she was clearly admonished of the consequences of utilizing those privileges contrary to established regulations.

The manner in which plaintiff's unauthorized use of travel privileges came to light is also relevant to the issue of pretext. According to the deposition of LUIS F. MACIAS, plaintiff's supervisor, an EXECUTIVE' Lead Agent working for the defendant reported having seen plaintiff "traveling with another person to Miami on various occasions, normally using the 4:00 in the morning flight to Miami." [Tr. 40] MR. MACIAS further indicated in his deposition that it was common practice for agents to alert management of possible inappropriate conduct by fellow employees at work. [Tr 39]. This information was then relayed to MR. PEREZ, of the Security Department, for further investigation.

Inquiries pertaining to plaintiff's traveling must be examined within the background of her chronic absenteeism from work. Given her poor attendance record defendant was justified in ascertaining the possibility that plaintiff's absences might not be entirely health-related but were due in part to the fact that she was away on a trip. Apparently doubts concerning her traveling companion arose thereafter and plaintiff was specifically requested to submit the marriage certificate justifying the propriety of travel benefits for MR. COLON CLAUDIO.[2] The investigation re-

---

**2.** The AA Performance Counseling Record for March 27, 1995 makes reference to various conversations held between management and plaintiff regarding her marriage certificate which plaintiff had **promised** to bring but was not able to due to the fact that she was moving. According to the note, the marriage certificate was necessary in order to change the non-revenue travel card in plaintiff's personnel file. The certificate was further requested in writing on April 1, 1995. On April 3, 1995 plaintiff provided instead an affidavit indicating that she has been living with Mr.

vealed that plaintiff was not married to her traveling companion which contravened company rules. This finding lead to plaintiff's termination from employment in April 1995.

Based on the foregoing we are hard-pressed to conclude that defendant's reason for dismissing plaintiff was pretextual and motivated by retaliatory *animus*. Additionally, defendant has pointed out that similar action had been previously taken against another employee for allowing unauthorized family members to use non-revenue travel tickets which further corroborates the nondiscriminatory nature of the employer's decision.

## 2. Circumstantial Evidence of Discriminatory *Animus*

As evidence of discriminatory *animus* plaintiff alleges that even though her performance evaluations were satisfactory and that her only problem was her "sickness", defendant engaged in a harassment campaign consisting of accusing her of being late or absent, refusing to appoint her to a full-time position, investigating her at her other place of employment, placing her on leave several times and eventual dismissal. According to plaintiff, all these actions were pretextual for her retaliatory dismissal.

We find that these allegations are mostly general and conclusory in nature.

■ Plaintiff alleges that on "many occasions" she informed her supervisor that her time card was not where she had previously left it which forced her to "clock in late." Plaintiff's Motion in Opposition. . (docket No. 43) p. 26. The only reference in the record in this regard is an entry in the Performance Counseling Record for February 13, 1995 which makes reference to an apparent failure by plaintiff to punch in at 6:30 a.m. because she allegedly "forgot". The note further indicates that another agent who punched in at 6:27 a.m. did not see her at the clock and a supervisor saw her at gate 12 "a little after

6:35H." We fail to infer any improper motive from this incident. As evidenced by the entry, defendant attempted to corroborate plaintiff's version of the facts with other employees prior to any action which we view as an impartial course of conduct.

Plaintiff further alleges that defendant engaged in a "defamatory campaign" whereby she was being "blacklisted" with other workers and termed a problematic employee. We have found no evidence in support of this claim.

Plaintiff contends that despite having the necessary qualifications, seniority and adequate performance her petitions for a full time position were never acquiesced to by defendant. No particularized evidence on this matter has been elicited.

■ In her deposition plaintiff further complains of alleged persecution based on the demands made by her supervisors to wear the correct uniform for the ramp escort position. She does not contest the fact that there were specific uniform requirements for her new job. Her only claim is that it was economically onerous for her to comply. We find no inference of harassment can be made under the circumstances as presented by plaintiff. She was aware that there was a policy in effect and concedes that she was not complying with its terms and conditions. The November 18, 1994 entry in the American Airlines Performance Counseling Record form clearly depicts the situation and further explains the reasons why the difference in the uniform requirements between Flight Attendant and ramp escort. In pertinent part, the note reads "once again reminded Ivelisse of Company Uniform Policy" itemizing the specific uniform requirements and the reasons for those requirements. Furthermore, the entry further indicates that plaintiff "was reminded '*REPEATEDLY*' by other lead agents supervisors and managers that Uniform Poli-

JOSE COLON CLAUDIO since 1989 as hus-                band and wife.

cy must be adhered to!" (Emphasis in original).

■ The thrust of plaintiff's evidence to prove discrimination rests on the alleged motives for defendant to contact EL SAN JUAN HOTEL ("ESJ"), plaintiff's other employer, under the pretext of learning her whereabouts. Plaintiff labels this conduct as pretextual arguing that defendant was aware that she held another employment.

Defendant's contacts with ESJ must be examined within the framework of plaintiff's poor attendance record in December 1994. During the course of that month plaintiff was consistently absent and even hospitalized with dengue. Although on most occasions plaintiff called to advise she would be absent there were days when this did not occur. On the other hand, according to the record, defendant had no direct means of contacting plaintiff in case of an unannounced absence because she did not have a telephone at her residence.

The entry for **December 15, 1994** at Form C23—Supervisor's Record of Discussion and Action Concerning Employee's Attendance—signed by F. VAZQUEZ clearly illustrates the reasons for defendant to approach ESJ.

> Due to her absenteeism during Dec. 9 to Dec. 15 (today) we were concerning (sic) about her health condition. I called at the Hotel San Juan (other job) requesting information of her status. Juan Carlos supervisor at the Hotel states that she was working for the last 2 days (13/14) on her sick condition with dengue.. Due to her failure to call and no information not (sic) received on her status and **no telephone to contact her** and decided to call the San Juan Hotel

because we received (sic) that she was working there.

(Emphasis ours).

It is important to bear in mind that plaintiff was indeed working at ESJ while absent from her position with EXECUTIVE. Under these circumstances, far from constituting harassment we find defendant's efforts to contact ESJ reasonable in view of the fact that it did not have any current news regarding plaintiff's health or when she was expected back at work and had no available means of calling her directly.

■ As additional evidence of retaliatory harassment, plaintiff points to a meeting held on December 23, 1994, the day when she reported back to work after an extended absence and after defendant learned that she had been working elsewhere while having reported sick with the defendant. At that time plaintiff was "ordered [ ] to write a report in relation with her medical condition, suspended her from work and instructed her to obtain from her doctor a written statement on her diagnosis, prognosis and treatment." Plaintiff's Motion in Opposition ... (docket No. 43) p. 27.

A written account was requested from plaintiff because there was no evidence in the record to explain this situation. It allowed her the opportunity to state her version of the facts. Additionally, plaintiff was required to furnish medical documentation in support of her ability to work in one location and not the other as well as to determine if she was fit to come back to work on that date.[3]

Again, faced with the particular events at the time it was reasonable for defendant to confront plaintiff with the facts and have her justify the reasons for her ab-

---

**3.** Plaintiff was suspended from work while this matter was investigated. The Form C23—Supervisor's Record of Discussion and Action Concerning Employee's Attendance—dated **December 24, 1994** reads:

Agt. was **suspended with pay since 24 Dec. 1994 until 3 Jan. 1995** due to an investiga-

tion related with medical releases. Then, she said that she never received the **notification to return to work**, she continued suspended until **23 Jan. 1995.** She returned to work on 24 Jan. 1995.

sence while being able to report for work in her other place of employment.

Further, we find no negative inference can be drawn from the fact that plaintiff was required to submit medical evidence related to her condition to verify her claim. We fail to consider defendant's reaction as pretextual. On the contrary, it was well-grounded and reasonable under the circumstances.

The timing of the discharge in relation to the filing of her complaint may also be taken into consideration in examining the legitimacy of the adverse action. *See Hodgens,* 144 F.3d at 168 ("close temporal proximity between two events may give rise to an inference of causal connection"); *Fennell,* 83 F.3d at 535 (termination shortly after complaint of discrimination). Even though the time elapsed between the two events does not appear to be close enough to be *per se* significant plaintiff points to a conciliatory hearing on this matter which was held on **December 14, 1994** at the PR–DOL. However, based on the overall evidence presented we find no discriminatory inference can be made based on the time elapsed between the administrative hearing and her dismissal.

### 3. Conclusion

Because plaintiff's dismissal was motivated by a violation of established company rules and because this action is consistent with previous personnel adverse decisions against other employees we do not find sufficient evidence to infer that defendant's proffered reason for termination was untruthful.

Furthermore, plaintiff has failed to meet her burden to present sufficient evidence for a fact finder to reasonably conclude that her dismissal was motivated by her having filed an ADA discrimination claim with the local agency.

4. *See also* Opposition (docket No. **43**), Reply (docket No. **44**) and motion submitting addi-

## V. CONCLUSION

Based on the foregoing, Executive Airlines, Inc.'s Amended Motion for Summary Judgment (docket No. 42)[4] is hereby **GRANTED.**

Accordingly, plaintiff's claims under ADA are hereby **DISMISSED.**

The court having disposed of the federal jurisdictional claim, it is further ORDERED that the supplemental claims asserted by plaintiff in the Amended Complaint are hereby **DISMISSED WITHOUT PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

tional support (docket No. **51**).