**Rosemary FELICIANO, Plaintiff, Appellant,**

v.

**STATE OF RHODE ISLAND, et al., Defendants, Appellees.**

No. 98–1436.

United States Court of Appeals, First Circuit.

Heard Sept. 9, 1998.

Decided Nov. 18, 1998.

Stephen J. Dennis, with whom Law Office of Stephen J. Dennis, was on brief, for appellant.

Virginia M. McGinn, Special Assistant Attorney General, with whom Jeffrey B. Pine, Attorney General, was on brief for appellees.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

Before the Court is appellant Rosemary Feliciano's appeal from: (1) the district court's grant of summary judgment against her claim under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*; and (2) the district court's grant of judgment on the pleadings against Appellant's claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 *et seq.*, and under the United States and Rhode Island Constitutions. For the reasons stated in this opinion, we affirm the decision of the district court.

## BACKGROUND

In August of 1988, Appellant Rosemary Feliciano was hired by the State of Rhode Island Department of Mental Health, Retardation and Hospitals ("MHRH") as an Institutional Attendant ("IA") at the Medical Center General Hospital in Cranston, Rhode Island. An Institutional Attendant "perform[s] a variety of duties in the care, custo-dy, and treatment of persons [who are] physically or mentally incapacitated." According to the State's written job description, the "essential functions" of the position are performing personal hygiene, transferring and lifting patients, administering minor treatments, bathing, dressing and grooming patients, cleaning bed pans and other equipment, exercising and walking patients to various locations, and participating in food service to patients at meal times. The same document lists the position's "critical demands" as lifting 50 pounds maximum, lifting patients from bed to a chair or stretcher, assisting in bathing patients, frequently reaching above and below shoulder level, frequently walking or standing, and frequently pushing or pulling up to 50 pounds.

Appellant injured her lower back at work in 1989 and again in 1991. In November of 1992, the Rhode Island Workers' Compensation Court declared that appellant was disabled from July 24 through October 16, 1991. Subsequently, appellant requested a leave of absence due to her disability. The State denied appellant's request because her disability ended on October 16, 1991 and ordered her to return to work by March 15, 1993. On March 19, 1993, appellant was terminated by the State from her position as an IA for failing to return to work as ordered.

On June 14, 1993, the State reinstated appellant and shortly thereafter sent her a letter offering to provide a gradual transition back to the full-time position of an IA. Appellant was given until July 29, 1993 to decide whether to return, and on December 20, 1993, she was terminated again for failing to return to work.

On June 9, 1995, appellant filed the present action in Rhode Island District Court, alleging several claims against MHRH, its Director A. Kathryn Power, and the State of Rhode Island (collectively, "Appellees"). Appellant asserted employment discrimination in violation of the ADA, the Rehabilitation Act, the federal and state constitutions, and Rhode Island law.

On February 5, 1996, appellees filed a motion for summary judgment against appellant's ADA claim, arguing that appellant was unable to perform the "essential functions" of her job as an Institutional Attendant, and therefore was not a "qualified individual with a disability" for purposes of the ADA. In support of their motion, appellees offered appellant's deposition testimony in which she stated that "being an IA was too physical for the way I physically am" and "I cannot go back under those circumstances doing full patient care, total patient care". Appellees also submitted the written job description of the IA position.

In opposition to appellees' motion, appellant submitted medical reports which reflect that she has a back condition which restricts her ability to lift to a maximum of 20–30 pounds, that this condition leaves her partially disabled with restricted activities, and that she is unable to perform any occupation or activity involving repetitive bending. Appellant also submitted her own affidavit in which she states: (1) that she has a disability; (2) that she had been unable to perform many major life activities, including working as an Institutional Attendant, lifting, walking, standing and other manual tasks; (3) that she was otherwise qualified to perform the essential functions of her position, including several less physical functions, such as bathing and dressing patients; and (4) that with reasonable accommodations such as a power Hoyer lift, she would have been able to perform the essential functions of her job that did not require the pushing or pulling of patients.

Appellant also submitted the affidavit and files of Dr. Michael Judge, Dr. Bryan Buchholz, and Mr. Stephen Colella. Dr. Judge stated in his affidavit that he examined appellant and that appellant is partially disabled. Dr. Judge also stated in a letter dated April 1, 1993 that appellant was unable to perform all of the duties of her previous occupation. Dr. Buchholz, an Occupational Ergonomist who reviewed appellant's medical reports, stated that lifting patients places stress on the lower back of all workers and that a power Hoyer lift is an appropriate and important accommodation for workers in ap-

pellant's condition. Colella, a Rehabilitation Specialist who reviewed appellant's medical reports, concluded that appellant remained incapable of performing the duties and responsibilities of a nurse's aide.

On October 7, 1996, Magistrate Judge Robert W. Lovegreen issued a Report and Recommendation to the district court in which he recommended that appellees' motion for summary judgment on the ADA claim be granted. Magistrate Judge Lovegreen found that appellant had not raised a genuine issue with regard to whether she could perform the essential functions of an IA with or without reasonable accommodation. Magistrate Judge Lovegreen also found that appellant had not raised a genuine issue with regard to whether there were any reassignment possibilities that would qualify as a "reasonable accommodation" under the ADA. Consequently, Magistrate Judge Lovegreen found that no genuine issue existed with regard to whether appellant was a "qualified individual with a disability", a critical element of her ADA claim. On November 3, 1997, the district court issued an order accepting the findings and recommendation of the magistrate and granting the motion for summary judgment against the ADA claim.

Appellees subsequently filed a motion for judgment on the pleadings, pursuant to Fed. R.Civ.P. 12(c), against appellant's claims under the Rehabilitation Act and the federal and state constitutions. On February 24, 1998, Magistrate Judge Lovegreen issued a second Report and Recommendation which recommended that the district court grant appellees' motion. Magistrate Judge Lovegreen concluded that since appellant could not demonstrate that she was a "qualified individual with a disability" under the ADA, she also could not demonstrate that she was a "qualified individual with a disability" under the Rehabilitation Act. The magistrate also recommended that appellant's constitutional claims be dismissed as vague, because appellant failed to argue or even identify them. Finally, the magistrate recommended that the district court decline to exercise supplemental jurisdiction over the state law causes of action. On March 12, 1998, the district court issued an order accepting the

findings and recommendation of the magistrate. Appellant subsequently filed the present appeal.

## DISCUSSION

### I. The District Court's Grant of Summary Judgment Against Appellant's Americans With Disabilities Act Claim

Appellant first argues that the district court erred in accepting Magistrate Judge Lovegreen's recommendation that summary judgment be granted on her ADA claim.

■■■■ We review the district court's grant of summary judgment *de novo*. *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1st Cir.1997). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial. *Serrano–Cruz*, 109 F.3d at 25; *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841–42 (1st Cir.1993). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(citing Fed.R.Civ.P. 56(e)). "[P]laintiff ... [must] offer[ ] ... 'significant probative evidence tending to support the complaint.'" *Id.* at 256, 106 S.Ct. 2505 (quoting from *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### A. ADA Standard

Section 12112(a) of the ADA states:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

■■■ To establish an ADA claim, a plaintiff must establish: (1) that he or she suffers from a "disability" within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged him or her in whole or in part because of that disability. *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 30 (1st Cir.1996). The second element of the ADA standard is the only element in dispute in the present case.

### B. Appellant's Ability to Perform the Essential Functions of the Institutional Attendant Position

■■■ Appellant argues that the district court erred in adopting the magistrate's finding that appellant failed to demonstrate that she could perform the essential functions of her job with or without reasonable accommodation. Appellant claims that the magistrate improperly focused on the passage of appellant's deposition in which appellant stated that "[b]eing an IA was too physical for the way I physically am." Appellant argues that this statement was taken out of context by the magistrate and that, in its proper context, this statement indicates only that the IA position would be too physical for appellant if she were to be denied reasonable accommodations.

Appellant complains that the magistrate ignored the affidavits she presented which she alleges create a genuine issue of fact on the question of whether she could perform the essential functions of the IA position. Appellant points to her own affidavit, as well as the affidavits of Dr. Michael Judge, Dr. Bryan Buchholz, and Stephen Colella. In her affidavit, appellant states that she could perform the essential functions of her employment with accommodations. *See* Joint Appendix, Exhibit 14, ¶ 5. Appellant claims that Dr. Judge stated in his affidavit that appellant is medically partially disabled. Appellant also claims that Mr. Colella stated in

his affidavit that she could perform the essential functions of her job with accommodations. Finally, appellant claims that Dr. Buchholz stated in his affidavit that a power lift would be an appropriate accommodation for appellant.

However, these affidavits do not create a genuine issue regarding appellant's ability to perform the essential functions of the IA position. In his affidavit, Dr. Judge offered no opinion as to whether appellant could perform those functions; he merely stated that appellant was "partially disabled." Joint Appendix, Exh. 11, at 1. In his April 1, 1993 letter, Dr. Judge actually wrote that appellant was *unable* to perform all of the duties of her previous occupation. *See id.* at 9. Dr. Buchholz similarly refrained from making a judgment in his affidavit about appellant's ability to act as an IA. He stated only that lifting patients places stress on the lower back of all workers and that equipment such as a Hoyer lift is an appropriate and important accommodation for Ms. Feliciano, given her condition. *See* Joint Appendix, Exh. 12, at 2.

▮ Additionally, despite appellant's contention to the contrary, nowhere in Colella's affidavit does he state that appellant could perform the essential functions of her job with accommodations. Colella actually stated that appellant "remains incapable of performing duties and responsibilities ... of a nurse's aide." Joint Appendix, Exhibit 13, at 1, ¶ 3. Finally, not even appellant's own affidavit states that she would have been able to perform *all* of the essential functions of her job, even with reasonable accommodations. Rather, appellant states that, with reasonable accommodations, she would have been able to perform the essential functions of the IA position *that did not require the pushing or pulling of patients. See* Joint Appendix, Exh. 14, ¶ 5. Appellant does not appear to contest the magistrate's adoption of Rhode Island's written job description of the IA position, which lists the "transfer and lifting of patients" as an essential job function and the ability to "frequently push/pull up to 50 lbs." as a critical demand of the position. The ADA does not require an employer to accommodate a disability by forego-

ing an essential function of the position or by reallocating essential functions to make other workers' jobs more onerous. *See Laurin v. Providence Hospital, Massachusetts Nurses Assoc.*, 150 F.3d 52, 56 (1st Cir.1998); *Soto–Ocasio v. Federal Express Corp.*, 150 F.3d 14, 20 (1st Cir.1998); *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir.1991). Thus, the Court cannot find error in the magistrate's failure to be swayed by the four affidavits submitted by appellant.

Appellant also claims that the magistrate made several impermissible assessments regarding the weight and credibility of the evidence. First, appellant argues that the question of whether she could perform the essential functions of an IA with the assistance of a power lift and another IA is a question for the trier of fact. However, there is no genuine issue of fact regarding this question. Appellant has produced no evidence to show that she could perform the essential functions of the position with or without reasonable accommodation. Appellant has produced no medical evidence that a power lift and the assistance of another IA would permit her to perform the essential functions of the position. Further, the magistrate was correct in noting: (1) that physically or mentally incapacitated patients are not always able to position themselves on a lift; and (2) that a lift would not assist appellant in certain essential activities, such as walking and exercising patients. Appellant testified to what occurred when she attempted to lift a patient with the assistance of a Hoyer lift and another IA: she reinjured her back and leg. *See* Feliciano Deposition, at 27:23—28:10. Because we agree that there is no genuine issue on this question, we do not find the magistrate's decision to be an improper weight or credibility determination.

Appellant next argues that the magistrate's statement that the assistance of a lift and another IA will not always be available also constitutes an impermissible assessment of weight and credibility. However, in appellant's own deposition testimony, she stated: (1) that each IA had eight to ten patients per shift (*See* Feliciano Deposition, at 17:12–13); (2) that "it was very difficult to work in pairs" (*Id.* at 22:22–23); and (3) that the use

of a Hoyer lift "mandates two people, and there were times we had to do it on our own" (*Id.* at 23:4–5). In light of this testimony, the magistrate did not weigh the credibility of the evidence; all of the testimony, including appellant's, supported the magistrate's determination.

The third instance in which the magistrate allegedly acted as the trier of fact was in his statement that "[c]ommon sense dictates that physically or mentally incapacitated patients, which an IA must care for, are not always able to position themselves on the sling of a lift . . . and they are not able to walk and/or exercise on their own." October 7, 1996 Report and Recommendation, at 11. Appellant argues that only a trier of fact can decide this genuine and material issue. The Court cannot agree. Again, the magistrate was not faced with competing testimony on this issue. Appellant does not seem to contend—and certainly has offered no evidence to show—that all of those incapacitated patients can position themselves on a lift, walk, and exercise on their own. In fact, the classification of those patients as "incapacitated" demonstrates the futility of taking such a position. Indeed, appellant's own deposition testimony stated that approximately only five out of 30 patients in a ward were ambulatory (*See* Feliciano Deposition, at 14:12–15), meaning that the other 25 were not able to walk and move around on their own.

In sum, the Court cannot fault the magistrate for concluding that appellant is unable to perform the duties essential functions of the IA position. Appellant admitted in her deposition that the position was too physical for her. Appellant offered no evidence that indicates that she is able to perform all of the essential functions of the position. Appellant's own doctor and vocational expert stated that she cannot perform all of the of her previous occupation. At best, appellant's testimony consists of unsupported conclusions and bald assertions that she could perform most of the essential functions of the position with the help of another IA and a power Hoyer lift. These assertions are belied by appellant's own experience with such assistance, by the reality that such assistance is not always available, and by the inability of such lifting assistance to help appellant perform other essential tasks, such as walking and exercising patients. Therefore, the Court cannot conclude that a material and genuine issue exists with regard to the question of whether appellant can perform the essential functions of the IA position.

## C. "Reasonable Accommodation" Through Reassignment to Positions Other Than An Institutional Attendant

The determination that appellant cannot perform the essential functions of her job as an Institutional Attendant does not end the analysis. An ADA plaintiff must establish that he or she is a "qualified individual with a disability," meaning that he or she is able to perform the essential functions of his or her position, either with or without reasonable accommodation. *Katz,* 87 F.3d at 30. Section 12111(9)(B) of the ADA states that "reasonable accommodation" may include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B); *Criado v. IBM Corp.,* 145 F.3d 437, 443 (1st Cir.1998).

The plaintiff, as the party who must prove that he or she can perform the essential functions of the position with or without reasonable accommodation, bears the burden of showing the existence of a reasonable accommodation. *See Barnett v. U.S. Air, Inc.,* 157 F.3d 744, 748–49 (9th Cir.1998). In the present case, appellant argues that MHRH had a duty to accommodate her by reassigning her to a position that she could perform. Under *Barnett,* then, appellant has the burden of showing the existence of such positions. *See id.* Magistrate Judge Lovegreen concluded that appellant failed to show that she sought a vacant position at the hospital that was within her ability to perform. *See* October 7, 1996 Report and Recommendation, at 12. The magistrate also stated that there was no evidence in the record that appellees refused to give appellant any such position based upon her disability. *See id.*

Appellant takes issue with the magistrate's conclusion that she failed to show that there was a vacant position that was within her ability to perform. First, Feliciano points to her deposition testimony, in which she stated

that she told Kathy Sherman, the Director of Nursing Services, that she heard that a receptionist was retiring. *See* Joint Appendix, Exh. 10, at 68:6–9. Feliciano testified that she told Sherman that she would like the job when the receptionist retired, but Sherman told Feliciano that she was not entitled to that type of accommodation because she was not on Worker's Compensation. *See* Joint Appendix, Exh. 10, at 68:9–13. Second, appellant claims that MHRH had available a position for a clerical ward aide, which was six pay grades lower than an IA. *See* October 7, 1996 Report and Recommendation, at 13. Third, the magistrate himself noted that there were community living aide positions available. *See id.* Finally, appellant claims that she was an employee of the State of Rhode Island, not just the one administrative agency for which she worked. Therefore, appellant claims that MHRH had an obligation to consider all state-wide employment opportunities in helping her obtain a vacant position.

With regard to the alleged vacancy for the receptionist position, appellant failed to demonstrate that a vacancy existed. As evidence of such a vacancy, appellant offered only her own deposition testimony, in which she stated that she told someone that she heard by "word of mouth" that some unknown receptionist was going to retire. Fed. R.Civ.P. 56(e) requires the parties to submit admissible evidence in supporting and opposing motions for summary judgment. The Court rejects appellant's deposition testimony on this issue, because it is based on inadmissible hearsay, rather than her own personal knowledge. Consequently, Appellant placed no admissible evidence before the magistrate that demonstrates that the receptionist position she allegedly heard about actually existed.

With regard to the vacancy for the position of clerical ward aide, appellant offered no evidence—or argument—that she sought the position. Further, even if she sought the position of clerical ward aide, that position was filled based upon seniority, bargaining unit membership, and current job classification. Despite appellant's arguments to the contrary, "reasonable accommodation" does not require MHRH to automatically give her the position. Courts that recognize the duty to reassign also recognize the limitation on that duty: an employer is not required to violate the provisions of a collective bargaining agreement or the rights of other employees in seeking such reassignment. *See, e.g., Cassidy,* 138 F.3d at 634; *Kralik v. Durbin,* 130 F.3d 76, 82–83 (3d Cir.1997); *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996). Therefore, even if appellant had offered evidence that she sought the clerical ward aide position and was denied it, the failure to automatically reassign appellant to that position—in violation of the rights of the person who received the position under the selection process outlined in the collective bargaining agreement and departmental policies—does not violate the ADA.

The same is true with regard to the vacant positions of community living aide. The magistrate noted that these jobs were within another bargaining unit, requiring appellant to bid for them. *See* October 7, 1996 Report and Recommendation, at 13. Appellant lost her bid for these positions due to her lack of seniority in the other bargaining unit (*See* October 7, 1996 Report and Recommendation, at 13), meaning that more senior employee-applicants were entitled to the positions under the collective bargaining agreement. Therefore, reassigning appellant to one of those positions would violate the rights of those employees and would violate the provisions of the collective bargaining agreement, neither of which the ADA requires MHRH to do in making accommodations. *See Cassidy,* 138 F.3d at 634; *Kralik,* 130 F.3d at 82–83.

Appellant's final argument on this issue is that because she was a state employee, her employer had an obligation to consider state-wide employment opportunities in finding her alternative employment. Appellant failed to advance this argument below, and it is therefore waived. We need go no further.

### D. Conclusions Regarding the ADA

In sum, appellant has not raised a genuine issue with regard to: (1) whether she can

perform the essential functions of the Institutional Attendant position; or (2) whether the reassignment to any other positions was a reasonable accommodation. Therefore, appellant has failed to raise a genuine issue with regard to the second element of her ADA cause of action: that she is able to perform the essential functions of her position, either with or without reasonable accommodation. Consequently, the summary judgment ruling on appellant's ADA claim is affirmed.

## II. The District Court's Grant of Judgment on the Pleadings on Appellant's Remaining Claims

Appellant next argues that the district court erred in accepting the magistrate's recommendation that judgment on the pleadings be granted on appellant's claims under the Rehabilitation Act and the federal and state constitutions.

■■■■ We review the district court's grant of judgment on the pleadings *de novo.* *International Paper Co. v. Town of Jay,* 928 F.2d 480, 482 (1st Cir.1991). Federal Rule of Civil Procedure 12(c) allows a party, "[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings." In reviewing such a motion, the district court must accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in her favor. *Rivera–Gomez v. Adolfo de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (citations omitted). Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of her claim which would entitle her to relief. *See id.; Santiago de Castro v. Morales Medina,* 943 F.2d 129, 130 (1st Cir.1991). However, Rule 12(c) also provides that:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present

all material made pertinent to such a motion by Rule 56.

### A. Rehabilitation Act

Because the magistrate based his decision regarding the Rehabilitation Act on his previous determination that appellant could not perform the essential functions of her job, it is clear that the court treated this portion of the Rule 12(c) motion as a motion for summary judgment, as permitted under the rule. We therefore also treat the motion as one for summary judgment. *See Dominique v. Weld,* 73 F.3d 1156, 1158 (1st Cir.1996).

Section 504(a) of the Rehabilitation Act prohibits discrimination against "otherwise qualified individual[s] with a disability" under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a). Subsection (d) continues:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d).

The magistrate recognized § 504 and also cited *Equal Employment Opportunity Commission v. Amego,* 110 F.3d 135, 143 (1st Cir.1997), for its statement that "[t]he standards used to determine whether [§ 504] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the ADA." February 24, 1998 Report and Recommendation, at 4. After citing this authority, the magistrate stated that the district court had already accepted the finding that appellant cannot perform the essential functions of her job. *See id.* The magistrate noted that appellant had not alleged or presented any additional facts to the contrary and therefore concluded that appellant is not a "qualified individual" under the Rehabilitation Act. *See id.* The magistrate recommended that appellees' motion for judgment

on the pleadings be granted, and the district court accepted that recommendation.

■ Appellant argues that, despite the "coordination between the Rehabilitation Act and the ADA", "it is clear that some distinctions remain between the interpretation of an individual who has a handicap and who does not have a handicap between the two Acts." Appellant's Brief, at 25. Appellant argues that these differences cannot be completely reconciled by the court without an opportunity to present additional extrinsic evidence. *See id.* Appellant does not, however, outline for the Court any particular distinction between the Rehabilitation Act and the ADA that is relevant to the present appeal. Nor does appellant make any attempt to illustrate why the magistrate's recommendation was incorrect or why appellant should be deemed a "qualified individual" under the Rehabilitation Act when the court has found her not to be one under the ADA. Additionally, even if appellant had articulated a difference in the applicable legal standards, appellant does not explain how the opportunity present additional extrinsic evidence would assist the court in answering the purely legal question regarding the differences between the Rehabilitation Act and the ADA. As a result of these failures, appellant has not demonstrated error in the magistrate's finding that appellant is not a "qualified individual" under the Rehabilitation Act.

### B. Appellant's Constitutional Claims

■ Appellant next argues that the district court improperly dismissed her constitutional claims without consideration. Magistrate Judge Lovegreen recommended that appellant's claims under the United States and Rhode Island Constitutions be dismissed for vagueness because appellant "[did] not state what her constitutional claims are or on what grounds they are brought." February 24, 1998 Report and Recommendation, at 5. Appellant's complaint merely stated that the appellees' actions violate the two constitutions.

Appellant argues that these claims should not have been dismissed because of an exchange which occurred between the magistrate judge and appellant's counsel at a hearing on February 10, 1998, two weeks before the magistrate's Report and Recommendation. At that hearing, the magistrate attempted to discern what exactly appellant's constitutional claim was. Appellant's counsel stated, for the first time, that she believed that appellant was alleging violations of her due process rights, resulting from the termination of her employment without a predetermination hearing. *See* Appellant's Brief, at 23–24. Appellant cites one case in her brief, *Penny v. Kennedy,* 915 F.2d 1065 (6th Cir. 1990), for her argument that some courts have recognized due process violations in the workplace, specifically in the context of drug testing. From this, appellant argues that the court should not have dismissed her constitutional claims.

The Court cannot accept appellant's argument. The only identification of appellant's constitutional claims was counsel's oral statement that she *believed* that appellant's constitutional claims were due process claims. Immediately thereafter, appellant's counsel acknowledged that the complaint did not to specifically set forth any constitutional claim. In fact, appellant has not yet identified what conduct by appellees violated due process; nor has she set forth a theory—cognizable or not—as to how the respective due process clauses were violated. Appellant may not merely invoke the Constitution in her complaint, fail to describe her claim or allege any facts in support of that claim, and expect that claim to survive a motion to dismiss. Notwithstanding appellant's belated revelation that she was asserting a due process claim, she has never set forth her constitutional claims with sufficient detail to survive a motion for judgment on the pleadings. Thus, the district court did not err in accepting the magistrate's recommendation to dismiss these claims for vagueness.

### CONCLUSION

Based on the foregoing, the judgment of the district court is **AFFIRMED.** Additionally, because the Court finds that the district court properly disposed of appellant's federal claims, the Court also **AFFIRMS** the district court's decision to decline to exercise supplemental jurisdiction over appellant's remain-

ing state law causes of action. Costs are granted to appellees.