Glover v. Casale, et al.                CV-99-297-M    04/18/00

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Michelle Glover,
      Plaintiff

      v.                                Civil No. 99-297-M
                                        Opinion No. 2000 DNH 093
Neal Casale, Philip Nichols,
Thomas Ritz, and The City of
Nashua Police Department,
      Defendants


**O R D E R**


     Michelle Glover brings this civil rights action against the

Nashua Police Department and several of its officers, seeking

compensation for alleged violations of her constitutionally

protected rights.  Her claims arise out of a routine traffic stop

for speeding.  The incident began in routine fashion, but soon

escalated, ending with her arrest for resisting detention, in

violation of New Hampshire Revised Statutes Annotated ("RSA")

642:2.  She claims that the arrest violated her rights under the

Fourth and Fourteenth Amendments.  She also brings state law

claims for negligence and intentional and/or negligent infliction

of emotional distress.  Defendants move for judgment on the
pleadings.  <u>See</u> Fed. R. Civ. P. 12(c).


## Standard of Review

Federal Rule of Civil Procedure 12(c) provides that,
"[a]fter the pleadings are closed but within such time as not to
delay the trial, any party may move for judgment on the
pleadings."  In reviewing such a motion, the court must credit
all material allegations in the complaint as true and draw all
reasonable inferences in the non-moving party's favor.  <u>See</u>
<u>Feliciano v. State of Rhode Island</u>, 160 F.3d 780, 788 (1st Cir.
1998).  The court may grant a motion for judgment on the
pleadings only if it appears beyond doubt that the plaintiff can
prove no set of facts in support of her claims which would
entitle her to relief.  <u>See</u> <u>Gaskell v. The Harvard Cooperative</u>
<u>Society</u>, 3 F.3d 495, 497-98 (1st Cir. 1993).

## Factual Background

Crediting the factual allegations in Glover's complaint as true, and construing all reasonable inferences from the pleadings in her favor, the material facts appear to be as follows.

On March 2, 1998, Glover was driving in a 40 mile-per-hour zone on Amherst Street in Nashua, New Hampshire. Officer Casale, of the Nashua Police Department, clocked Glover's speed at 55 miles per hour and effected a routine traffic stop. Glover stopped her vehicle in the breakdown lane and Casale approached. He asked for Glover's driver's license and registration, which she provided through a partially opened window. Casale asked several times that she roll the window down completely, but Glover refused. Glover's complaint suggests that Casale asked her to exit the vehicle, but she declined. See Complaint at para. 15 (alleging that after another officer arrived on the scene, she was "again" asked to exit the vehicle). Casale then walked around Glover's vehicle and apparently noted several problems (e.g., defective muffler, no registration).

Accordingly, he decided to have the vehicle towed and called for a tow truck. He then called for assistance from another Nashua Police Officer.

Defendant Officer Nichols arrived shortly before the tow truck. The officers approached the vehicle and again asked Glover to step out. Glover refused and, instead, rolled up the window and locked the doors. All the while, the engine in Glover's car continued to run. Casale then used his police baton in an attempt to open the small vent window on the driver's side of the car. When that proved unsuccessful, he retrieved a "Hooligan bar" (a tool apparently used by firefighters) and pried open the vent window. Glover says those efforts caused the glass to shatter and spray onto her. Casale then reached in through the vent window, turned off the engine, removed the keys, and unlocked the driver's door.

The officers then instructed Glover to step out of the car. She refused and, instead, defiantly clutched the steering wheel.

4

The officers were unable to extricate Glover from the vehicle, so Casale informed her that if she did not voluntarily comply and step out, he would spray her with pepper spray. Eventually, Glover acquiesced and exited the car. She was arrested for resisting detention. She was also charged with speeding and operating a motor vehicle with defective equipment.

In May of 1998, Glover was tried in the Nashua District Court and found guilty of speeding, defective equipment, and resisting detention. She appealed to the New Hampshire Superior Court, which, under New Hampshire law, had the effect of voiding the district court proceeding. A trial de novo was scheduled in the Superior Court. See RSA 599:1. See also State v. Green, 105 N.H. 260, 261 (1964). Following her trial in Superior Court, Glover was acquitted of all charges. Approximately one year later, she filed this civil suit.

## Discussion

I.  <u>Glover's Federal Claim - 42 U.S.C. § 1983</u>.

In support of her claim for damages under 42 U.S.C. § 1983, Glover says:

> The actions of the defendants in arresting Michelle Glover were performed without a good faith belief in the reasonableness of such actions.  Such actions thereby directly and proximately deprived Michelle Glover of her right[s] under the Fourth and Fourteenth Amendments to the United States Constitution, including her right to be secure in her person against unreasonable search and seizure and her right not to be deprived of life, liberty and property without due process of law.

> The actions of defendants Casale and Nichols in arresting Michelle Glover were willful, malicious and retaliatory, were committed in reckless, callous, and gross disregard for Michelle Glover's constitutional rights, and proximately and foreseeably caused damage to Michelle Glover.

Complaint at paras. 25 and 26.  Although her complaint provides little insight into the precise nature of her § 1983 claim, Glover expands upon her theory of recovery in her objection to defendants' motion for judgment on the pleadings.  <u>See</u>

6

Plaintiff's objection (document no. 10).[1]  In that objection,

Glover appears to advance two arguments in support of her § 1983

claim.  Neither can survive defendants' motion for judgment on

the pleadings.

A.    Retaliatory Arrest.

First, Glover seems to argue that she was arrested in

retaliation for having exercised a constitutionally protected

right.  She explains her claim as follows:

> [T]he parties agree the Defendant Casale performed a
> 360-degree inspection of Plaintiff's vehicle only after
> she chose to stay in her car.  This 360-degree
> inspection resulted not just in the speeding ticket for
> which Plaintiff had originally been pulled over, but
> two additional tickets for violations (muffler and
> inspection), as well as her arrest for resisting arrest
> (without an underlying arrest).  Defendant Casale's
> actions were clearly retaliatory, and taken to punish

---

[1]    What is clear from the complaint (and Glover's objection to the motion for judgment on the pleadings) is that Glover does not assert that the officers used excessive force during the course of her arrest.  Nor does she allege that those officers violated her substantive due process rights, or that Casale's decision to stop her was legally unjustified or merely a pretext used to facilitate his inspection of the car for possible violations.

7

> the Plaintiff for doing that which the law does not
> forbid [i.e., remain in the car, notwithstanding
> Casale's request to the contrary]. Defendant Casale's
> actions were a naked abuse of power.

Plaintiff's objection at 2-3 (emphasis supplied).[2] Thus, it would appear she believes that she had a Fourth Amendment right to remain in her vehicle, notwithstanding Officer Casale's directive to step out.

The Supreme Court has, however, made it clear that, at least under the circumstances described in her complaint, Glover had no constitutionally protected right to remain in her car after Officer Casale told her to step out. See Pennsylvania v. Mimms, 434 U.S. 106, (1977) (holding that a police officer's order to a driver to get out of a lawfully stopped vehicle was not an impermissible seizure under the Fourth Amendment). Consequently,

---

[2] Parenthetically, the court notes that it appears that Glover was not arrested for "resisting arrest." Instead, she was arrested for "resisting detention," after she interfered with Casale's efforts during the motor vehicle stop by locking herself in the vehicle, refusing to exit, and physically resisting the officers' efforts to remove her from the car. See RSA 642:2.

8

Glover's claim that the officers "retaliated" against her following her exercise of a "constitutionally protected right" necessarily fails.  In other words, because Glover's decision to remain in the vehicle (notwithstanding Officer Casale's directive to exit) was not constitutionally protected activity, and because Casale had the legal authority to order her out of the car, she cannot reasonably claim that Casale and/or Nichols "retaliated" against her for having engaged in constitutionally protected activity.  She was not engaged in constitutionally protected activity when she refused to exit the vehicle on order of the police officer.

   B.   Casale's Inspection of the Car.

Alternatively, Glover says that once she provided Casale with her license and registration, he had all the information that he needed to issue her a citation for speeding and, absent probable cause to believe that she had committed any other violations, was constitutionally obligated to issue the speeding ticket and let her leave the scene.  See Plaintiff's objection at

9

3 ("[O]nce Plaintiff had provided her driver's license and registration to Defendant Casale, all information he required to issue a citation was in his possession. Therefore, any further detention without probable cause, for whatever purpose, was per se unreasonable."). Consequently, says Glover, Casale was constitutionally prohibited from continuing her roadside detention and subsequently conducting the "360 degree inspection" of her car, all of which she says was unsupported by probable cause. The court disagrees.

First, to the extent Glover claims that Casale's warrantless inspection of her vehicle amounted to an unconstitutional search, that claim lacks any legal foundation. Plainly, Casale was not required to obtain a search warrant before inspecting the exterior of Glover's car, nor need he demonstrate that it was justified by an exception to the warrant requirement. See, e.g., New York v. Class, 475 U.S. 106, 114 (1986) ("The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'").

10

Casale's inspection of the car was a continuation or, at best, an expansion of his roadside detention of Glover, which was based initially on his decision to stop her for speeding. Glover does not contest the fact that the traffic stop was, at least initially, justified.[3] Her point, it seems, is that when Casale expanded the scope of that detention, from one simply relating to speeding into one involving an inspection of the car's exterior, he crossed a critical constitutional threshold. At that point, says Glover, Casale's actions could only be justified by the existence of "probable cause," which she says was lacking. In other words, Glover seems to suggest that her temporary roadside

---

[3] To be sure, there is some confusion concerning the legal standard by which the validity of traffic stops are measured. Compare Berkemer v. McCarty, 468 U.S. 420, 439 (1984) (noting that "the usual traffic stop is more analogous to a so-called 'Terry stop' than to a formal arrest," and concluding that it may be effected based upon an "articulable suspicion" that an individual has committed or is about to commit a crime), with Whren v. United States, 517 U.S. 806, 810 (1996) (suggesting that the "normal standard" governing the propriety of traffic stops is "probable cause"). Nevertheless, courts which have examined this issue seem to agree that a police officer may stop a driver based upon his or her "articulable suspicion" that a crime has been or is about to be committed. See, e.g., United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994) (citing United States v. Hensley, 469 U.S. 221, 226 (1985)).

11

stop matured into an unconstitutional arrest, and only after that unlawful "arrest" did Casale observe the defects in her car.

In the analogous "Terry-stop" context, the Court of Appeals has traditionally employed a two-step inquiry to assess its validity:

> To evaluate the overall reasonableness of this type of stop, a "Terry stop," the reviewing court must first consider whether the officer's action was justified at its inception; and second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place.

United States v. Kimball, 25 F.3d at 6. Because Glover does not contest the fact that Casale's decision to stop her for speeding was warranted, the first prong of the applicable test is satisfied: Casale's action was "justified at its inception."

Glover fares no better at the second step of the test. Even giving her the benefit of all reasonable inferences that might be drawn from the factual allegations set forth in the pleadings, the court is compelled to conclude that her brief road-side

12

detention did not mature into an unconstitutional de facto arrest (prior, of course, to her arrest-in-fact for resisting detention). Instead, Glover's own pleadings reveal that Casale was justified in examining the exterior of her car and that such conduct was reasonably related in scope to the circumstances which warranted the interference in the first place. See Kimball, 25 F.3d at 6.

In United States v. Sowers, 136 F.3d 24 (1st Cir. 1998), cert. denied, 525 U.S. 841 (1998), the Court of Appeals considered an argument very similar to Glover's, which it described as follows:

> Once Sowers produced a valid driver's license and registration, his thesis runs, Curran no longer had any valid basis to detain the motorists and all the events that transpired thereafter - [the passenger's] removal from the vehicle, the subsequent questioning of both individuals, the pat-down search, the seizure of the contents of the jacket's pockets, the arrest, and the post-arrest interrogation - were beyond the pale.

Id., at 26-27. Rejecting that legal argument, the court observed:

> The appellant's argument hinges, therefore, on whether
> the actions undertaken by the officer following the
> stop were reasonably responsive to the circumstances
> justifying the stop in the first place, as augmented by
> information gleaned by the officer during the stop.
>
> * * *
>
> Based on unfolding events, the trooper's attention
> (and, thus, his reasonable suspicions) shifted away
> from the equipment violations that prompted the initial
> stop toward a belief that the detainees were engaged in
> more serious skulduggery. Such a shift in focus is
> neither unusual nor impermissible.

Id., at 27.

In this case, after obtaining Glover's license and registration, Casale observed that Glover's car was not properly registered and the exhaust system was sub-standard. While neither of those violations formed the basis for the original stop, Casale was within his rights to turn his attention away from Glover and focus it on the condition of her vehicle, particularly in light of Glover's somewhat unusual behavior. As noted above, "[s]uch a shift in focus is neither unusual nor impermissible." Sowers, 136 F.3d at 27. This is particularly

14

true here, since the defects in Glover's car were in plain view. Thus, the court is compelled to conclude, as a matter of law, that Casale's decision to walk around Glover's car and note any obvious defective equipment was reasonably related to the circumstances justifying the traffic stop, as augmented by information gleaned during the stop.

In light of the foregoing, Casale's "360 degree inspection" of Glover's car, during which he observed several violations of New Hampshire's motor vehicle laws, did not violate any of Glover's constitutionally protected rights. Accordingly, to the extent that Glover bases her § 1983 claim on the assertion that Casale was prohibited from looking upon the exterior of her car without probable cause and/or a warrant, that claim fails as a matter of law. Alternatively, to the extent she claims that the Terry-style traffic stop matured into a de facto arrest, unsupported by probable cause, that claim too fails as a matter of law.

15

C.    Claims Against the Nashua Police Department.

It is well established that a municipal entity cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior or vicarious liability; the municipality itself must proximately cause the constitutional injury, through the promulgation (or tacit approval) of a municipal policy or custom. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). See generally Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). And, a § 1983 plaintiff must demonstrate that the challenged municipal custom or policy was the "moving force" behind the constitutional injuries at issue. See Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997). See also McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540, 544 (1st Cir. 1996) (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 819 (1985) and Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978)).

Thus, factual allegations that, if credited as true, would show that a municipal policy caused a violation of Glover's

constitutional rights, would state a viable claim under section 1983. However, because the court has concluded that the factual allegations set forth in Glover's complaint (even liberally construed in her favor) fail to allege any violation of her constitutionally protected rights, her claim against the Nashua Police Department necessarily fails as well.

II. <u>Glover's State Law Claims</u>.

Because the court has concluded that defendants are entitled to judgment on the pleadings as to Glover's federal claims, it must next consider whether it should, in its discretion, exercise supplemental jurisdiction over her state law claims. <u>See</u> 28 U.S.C. 1367(c)(3). In this case, the court concludes that the exercise of supplemental jurisdiction is unwarranted and, therefore, declines to do so. <u>See generally</u> <u>Camelio v. American Federation</u>, 137 F.3d 666 (1st Cir. 1998).

17

## Conclusion

Even viewing Glover's factual allegations in the light most favorable to her, and giving her the benefit of all reasonable inferences, it is plain that she cannot, as a matter of law, prove any set of facts that would entitle her to relief under § 1983. Accordingly, defendants are entitled to judgment on the pleadings as to count one of plaintiff's complaint. As to plaintiff's state law claims (counts two and three), the court declines to exercise supplemental jurisdiction and those claims are dismissed without prejudice.

**SO ORDERED.**

 

_____
Steven J. McAuliffe
United States District Judge

April 18, 2000

cc:  Laura J. Brevitz, Esq.
     Frank Bruno, Esq.
     Donald E. Gardner, Esq.

18