Manuella Dionisio REED, Plaintiff,

v.

LEPAGE BAKERIES, INC., Defendant.

No. CIV. 98–450–P–H.

United States District Court,
D. Maine.

July 6, 2000.

John R. Lemieux, Readfield, ME, for Manuella Dionisio Reed, plaintiff.

Frederick B. Finberg, Bennett, Bennett & Troiano, P.A., Portland, ME, for Lepage Bakeries, defendants.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

This is a case under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* It raises issues concerning the scope of a reasonable accommodation and burden of proof. I conclude on the summary judgment record that the employee has not shown that it is a reasonable accommodation to permit her to walk away from supervisors when their statements create stress for her.

On February 29, 2000, Magistrate Judge Cohen issued a Recommended Decision granting the employer's motion for summary judgment in part and denying it in part. Both parties filed timely objections to the Magistrate Judge's Recommended Decision. I have reviewed the record and the Recommended Decision *de novo.* I agree with the Magistrate Judge, except for his conclusion on the issue of reasonable accommodation. I now **GRANT** the employer's motion for summary judgment in full.

## FACTUAL BACKGROUND

I adopt the Magistrate Judge's recommended findings of fact. They are as follows.

The following undisputed material facts are appropriately supported in the summary judgment record. The defendant discharged the plaintiff on June 4, 1996 based on her behavior during a meeting on June 1, 1996 attended by the plaintiff, Cindi Callahan [Haven], a human resource representative, and Jerry Norton, production supervisor, which the vice-president for human resources, Anthony M. Nedik, found unacceptable, insubordinate and threatening. Letter dated June 4, 1996 from Anthony M. Nedik to Manuella Dionisio Reed ("Letter"), Exh. 2 to Deposition of Manuella Dionisio–Reed, Volume I, excerpts at-

tached to Defendant's SMF as Exh. 4 ("Plaintiff's Dep. I"). The plaintiff suffers from bipolar disorder, Deposition of Willard A. Bredenberg, M.D. ("Bredenberg Dep."), excerpts attached to Plaintiff's SMF as Exh. 8, at 12; Deposition of Stuart I. Price, LCSW ("Price Dep."), excerpts attached to Plaintiff's SMF as Exh.7, at 14, as well as posttraumatic stress related to sexual abuse that took place when she was a child, Price Dep. at 14.

On or about March 13, 1995 the plaintiff and a co-worker had a fight about the muffin bagger that involved the use of profanity. Plaintiff's Dep. I at 28–29. The plaintiff was upset and crying and had to leave work. Deposition of Manuella Dionisio–Reed (Vol.I) ("Plaintiff's Dep. IA"), excerpts attached as Exh. 1 to Plaintiff's SMF as Exh. 1, at 31–32. She "ended up" in the hospital for "around five days" and went back to work gradually. Id. at 32. After this incident, the counselor whom the plaintiff was seeing at the time told her to ask the defendant for an accommodation, specifically, that she be allowed to walk away from situations in which she was losing control. Id. at 32–33. Upon her return to work, the plaintiff met with Elizabeth Fraize, who worked in the personnel office, and Michael Pelletier, the plant manager. Plaintiff's Dep. I at 34–35. Pelletier told the plaintiff that "if you do have difficulties, you can walk away." Id. at 34. The plaintiff offered to get a note from her therapist, but both Fraize and Pelletier told her that that would not be necessary, and Fraize told her that "they would give me the accommodation." Id. The plaintiff mentioned at this meeting that she had a mental illness. Id. at 40.

At a second meeting attended by Pelletier, the plaintiff, and Jerry Norton, a supervisor, the plaintiff said that she "needed an accommodation to walk away because I had difficulties dealing with certain situations," and Pelletier told Norton that the plaintiff would need to

be able to walk away "when [she] got into certain situations," and that she could do so and get hold of Norton or Pelletier. Id. at 34, 38, 40.

On May 22, 1996 the plaintiff went on workers' compensation leave due to an injury to her forearm. On May 30, 1996 Cindi Callahan Haven called the plaintiff to offer her a position as a roll sorter that had been approved by her physician. Haven Dep. P at 36–37 & Exh. 1 thereto. During this telephone conversation, the plaintiff agreed to meet with Haven at 12:30 on the following Saturday, one-half hour before her first shift in the roll-sorter position would begin. Id. at 37; Plaintiff's Dep. I at 52. The plaintiff also expressed her preference for work on an earlier shift during this telephone conversation. Plaintiff's Dep. IA at 57. The defendant requires all employees returning from workers' compensation leave to meet with Haven and a supervisor prior to their first shift to review the employee's work restrictions. Deposition of Cindi Callahan Haven ("Haven Dep. D"), excerpts attached to Defendant's SMF as Exh. 10, at 12, 15.

As the meeting began on Saturday, June 1, 1996 the plaintiff told Haven that she had talked to another worker who was willing to switch shifts with her and Haven responded that they were not there to discuss that, but rather the job that was available. Haven Dep. P at 49–50. The plaintiff repeatedly returned to this subject and Haven repeatedly refused to discuss it. Plaintiff's Dep. IA at 55–56. The conversation became heated, Norton told Haven and the plaintiff to calm down, and Haven then told the plaintiff that she would not be allowed to switch shifts. Id. at 55. The plaintiff then said, "Fuck this," and put her hand on the doorknob. Id. at 56. Haven said to the plaintiff, "[I]f you walk out the door, you won't be able to start work today." Haven Dep. D at 54.

The plaintiff then asked Haven if she was going to fire the plaintiff and Haven

said "no." Plaintiff's Dep. IA at 56. The plaintiff then "lost it," went into a "blind rage," and said to Haven, "Fuck you." *Id.* at 56, 60. Haven, using the telephone in the room, called Anthony Nedik, the vice-president for human resources, and told him what had happened. Haven Dep. P at 53. Nedik told her to have the plaintiff escorted out of the building by Norton. *Id.* Norton and the plaintiff left the building. Plaintiff's Dep. IA at 71.

The plaintiff proceeded to Nedik's office, in a different building, where she told Nedik what had happened, stating that she had a mental illness that caused her to "explode" when she became angry and that she had tried to use her accommodation and "wasn't allowed to." *Id.* at 70, 72–75; Haven Dep. P at 53. After her conversation with Nedik, the plaintiff went to Haven's office and apologized to Haven. Haven Dep. P at 67. After meeting with the plaintiff again the following Monday, Nedik decided to terminate her employment. Deposition of Anthony Nedic [sic] ("Nedik Dep."), excerpts attached to Plaintiff's SMF as Exh. 4, at 39.

Recommended Decision on Defendant's Motion for Summary Judgment at 2–6 (footnotes omitted). I add only the following two clarifications. First, Cindi Callahan Haven, the Human Resource Representative who called the meeting, was in context a supervisor as was the third person at the meeting, Jerry Norton. Def.'s Undisputed Statement of Material Facts ¶¶ 37, 38; Haven Dep. at 12, 16, 24. Second, the accommodation that the employer agreed to give Reed—the ability to walk away from a stressful situation—was given in the context of stressful situations with co-workers and never discussed supervisors. Dep. of Jerry Norton at 26; Dep. of Michael Pelletier at 42.

## DISCUSSION

Reed claims that her employer violated the ADA when Haven and Norton allegedly prevented her from leaving the room during the return-to-work meeting. In support of her claim, she argues that, when she felt a rage episode coming on, the ADA permitted her to walk away from and not listen to her supervisors as a reasonable accommodation for her disability.[1] Reed Dep. II at 84.

Employers violate the ADA when they fail to make "reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). According to the statute, reasonable accommodations may include "job restructuring; part-time or modified work schedules; [and] reassignment to a vacant position." 42 U.S.C. § 12111(9). The defendant-employer need not grant such an accommodation if it "can demonstrate that the accommodation would impose an undue hardship on the operation of ... [its] business." 42 U.S.C. § 12112(b)(5)(A).

The parties debate whether walking away from a supervisor is a reasonable accommodation. Unstated, but underlying this debate, is the parties' dispute over the extent of Reed's burden. The circuit courts of appeals are divided on whether the employee or the employer bears the burden of demonstrating that a proposed accommodation is or is not reasonable. *See Walton v. Mental Health Assoc. of Southeastern Pa.*, 168 F.3d 661, 670 (3d Cir.1999) ("The circuits disagree whether the burdens of production and persuasion on the issues of reasonable accommodation and undue burden are properly placed on the plaintiff or the defendant, or are divided between them.") (citation omitted); *Borkowski v. Valley Cent. Sch. Dist.*, 63

---

1. I do not see a distinction between walking away from and not listening to a supervisor, both in the abstract and in the particular facts of this case. Therefore, for the sake of brevi-

ty, I will discuss Reed's requested accommodation as the right to walk away from her supervisor.

F.3d 131, 136 (2d Cir.1995) (stating that it is "not surprising, in view of the lack of any direct statutory guidance, that [courts] have found the assignment of the burdens of production and persuasion particularly difficult as to reasonable accommodation").

The First Circuit has refused to take a clear position in this debate. *See Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 649 n. 13 (1st Cir.2000) (noting that it was "aware of, but [saw] no reason to join, the debate in the circuits on the relationship between the two concepts of undue burden and reasonable accommodation"). Instead, its precedents are confusing.

On the one hand, the First Circuit has stated that the employee "bears the burden of showing the existence of a reasonable accommodation." *See Feliciano v. State of Rhode Island*, 160 F.3d 780, 786 (1st Cir.1998) (citation omitted). In *Feliciano*, the First Circuit affirmed a grant of summary judgment for the employer because the employee failed to demonstrate that her proposed accommodations—reassignment to vacant positions—either existed or were reasonable. *See id.* at 786–87. Thus, *Feliciano* appears to hold that an employee must put forward evidence demonstrating that the proposed accommodation is reasonable.[2] *Feliciano* cited a Ninth Circuit decision for the proposition that the employee "bears the burden of showing the existence of a reasonable accommodation." *Id.* at 786. That Ninth Circuit case clearly held that the "prima facie burden on the plaintiff-employee includes the burden of showing the existence of a reasonable accommodation. This holding is dictated by *the plaintiff's burden to show that an accommodation is reasonable.*" *Barnett v. U.S. Air. Inc.*, 157 F.3d 744, 749 (9th Cir.1998) (emphasis added).[3]

On the other hand, the First Circuit recently cast some doubt on its *Feliciano* approach. In *Ward v. Massachusetts Health Research Inst., Inc.*, 209 F.3d 29 (1st Cir.2000), the employee asserted that he should be permitted to work on an "open" schedule, meaning that as long as he worked 7.5 hours each day, it did not matter when he worked those hours. *See id.* at 36. The court declined to "hold that the flexible schedule Ward propose[d] [was] per se unreasonable," and required the employer to submit evidence that the accommodation would impose an undue hardship. *Id.* It cited *Stone v. City of Mt. Vernon*, 118 F.3d 92, 97 (2d Cir.1997), and described that case with the following parenthetical: "(in practice 'show[ing] that the accommodation is not reasonable, or that it imposes an undue hardship' " " 'amounts[ ] to the same thing' ")."[4] Thus, read broad-

2. The *Feliciano* court also concluded that some of Feliciano's proposed accommodations were unreasonable because the ADA does not require employers to violate a collective bargaining agreement in order to accommodate a disabled employee. *See id.* at 787. That conclusion may have been based on the (unstated) premise that such proposed accommodations are unreasonable *per se*.

3. After *Feliciano* was decided, *Barnett* was amended by 196 F.3d 979, 988 (9th Cir.1999), and withdrawn pending en banc review, 201 F.3d 1256 (9th Cir.2000).

4. This is a confusing citation. It was the first entry in a string citation that also contained citations to the Sixth, Eighth, and Tenth Circuits. *See Ward*, 209 F.3d at 36 (citing *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1183 (6th Cir.1996); *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir.1995); *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir.1995)). At least two of those circuits place the initial burden on the plaintiff to show that the accommodation is reasonable. *See Monette*, 90 F.3d at 1183 ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable."); *Benson*, 62 F.3d at 1112 (holding that the plaintiff has the initial burden to demonstrate that a reasonable accommodation is possible). The third places the burden on the plaintiff to show that the proposed accommodation is possible. *See White*, 45 F.3d at 361, 363 (holding that the plaintiff must demonstrate that the accommodation is possible, and affirming a grant of summary judgment to the defendant because the plaintiff had put forward no evidence demonstrating that the proposed accommodation was possible).

ly, *Ward* seems to say that the employee need only propose an accommodation that a court does not find to be *per se* unreasonable. Such a reading apparently would not require the employee to put forward any evidence that the proposed accommodation is in fact reasonable. On the other hand, *Ward* can be read more narrowly: the ADA itself lists job rescheduling—the remedy employee Ward proposed—as a possible form of reasonable accommodation, so there may have been no need for evidence of reasonableness; employee Ward was already being permitted to work a flextime schedule, just not the one he wanted, *see id.* at 31; and the court may have been taking judicial notice that flexible work schedules have become part of the modern American workplace. These factors collectively may have met the employee's burden on the accommodation's reasonableness as a practical matter, and may not have signaled a shift in the *Feliciano* articulation of the burden that employees face with regard to reasonable accommodation.

■ Since *Ward* did not purport to overrule *Feliciano*, I am obliged to attempt to follow both precedents. I therefore read *Ward* narrowly, as not overruling *Feliciano*, and I conclude that an employee still has the burden to put forward some evidence demonstrating that her proposed accommodation both exists and is reasonable. Moreover, the First Circuit continues to state that "the burden of showing reasonable accommodation is on the plaintiff." *See Garcia–Ayala,* 212 F.3d 638, 648. Such a reading

is consistent with the employee's ultimate burden to demonstrate that she is "able to perform the essential functions of the position with or without reasonable accommodation." *Criado v. IBM Corp.,* 145 F.3d 437, 443 (1st Cir.1998).

Such a standard is also consistent with the view of the majority of circuits. It appears that the Second and Third Circuits are the only ones that merge the inquiry of reasonableness and undue hardship into one question by placing the burden of persuasion on the employer to demonstrate that the proposed accommodation is either unreasonable or an undue hardship. *See Borkowski,* 63 F.3d at 138 (holding that the employee has the burden "to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the employee has done this, she has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant") (citation omitted); *Walton,* 168 F.3d at 670 (adopting *Borkowski* ). Although they do not always speak in terms of burdens of persuasion and production, many more circuits appear to place the burden of demonstrating reasonableness on the employee, and the burden of showing undue hardship on the employer. *See Willis v. Conopco, Inc.,* 108 F.3d 282, 283 (11th Cir.1997); *Riel v. Electronic Data Sys. Corp.,* 99 F.3d 678, 682 (5th Cir.1996); *Monette,* 90 F.3d at 1183 n. 10; *Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 543 (7th Cir.1995); *Benson,* 62 F.3d at 1112; *Barth v. Gelb,* 2 F.3d 1180, 1187 (D.C.Cir.1993).[5]

---

5. At least one Circuit explicitly places the burden of persuasion with regard to the question of reasonableness on the employee. *See Willis,* 108 F.3d at 283 (holding that "an ADA plaintiff (1) as part of her burden of production, must identify an accommodation that would allow her to perform her job duties and (2) as part of her burden of proving her case, must establish that such an accommodation is reasonable"). Others appear to hold that, at the very least, the employee has an initial burden of production to put forward evidence demonstrating that the proposed accommodation is reasonable. *See Riel,* 99 F.3d at 682

("The employee must show that the employer failed to implement a reasonable accommodation, and the employer may defend by showing business necessity or undue hardship."); *Monette,* 90 F.3d at 1183 n. 10 (6th Cir.1996) ("The plaintiff bears the initial burden of showing that a 'reasonable' accommodation is possible. If the plaintiff does so, the defendant employer has an opportunity to persuade the fact finder that the proposed accommodation imposes an undue hardship."); *Vande Zande,* 44 F.3d at 543 ("The employee must show that the accommodation is reasonable

I conclude that an employee has to put forward some evidence upon which a reasonable jury could conclude that the requested accommodation is reasonable. Even under the approach of the Second and Third Circuits, an employee must at least demonstrate that the accommodation is plausible.

 The only evidence that Reed has put forward in support of her claim that her proposed accommodation is reasonable—or even plausible—is that Pelletier and Norton commonly advised employees "to walk away from conflict situations." Pl.'s Resp. to Def.'s Appeal of the Magistrate Judge's Recommended Decision at 6. Reed concludes that "[i]f this temporary reprieve from conflict is permissible for other employees, it must be reasonable for Plaintiff." *Id.* Reed, however, fails to distinguish co-workers from supervisors.[6] It is one thing to advise co-workers on a plant floor to walk away from arguments with each other and quite another to allow employees to decide when to walk away from their supervisors. Because of this failure, Reed has not met her burden to put forward evidence demonstrating that it is reasonable or plausible to permit her to walk away from her supervisors.[7] She argues that her requested accommodation would require only a temporary moment away from the stressful situation. There is no support in the summary judgment record, however, to support the notion that she requested an accommodation with such a temporal limitation, or that either Reed or LePage understood the accommodation to have such a limitation.[8]

I conclude that Reed has failed to meet her burden of showing reasonableness.

---

in the sense both of efficacious and of proportional to costs. Even if this prima facie showing is made, the employer has an opportunity to prove that upon more careful consideration the costs are excessive in relation either to the benefits of the accommodation or to the employer's financial survival or health"); *Benson,* 62 F.3d at 1112 (8th Cir.1995) ("The employee at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability. However, once the plaintiff makes a facial showing that reasonable accommodation is possible, the burden of production shifts to the employer to show that it is unable to accommodate the employee.") (citation and internal quotation marks omitted).

6. Even if Pelletier merely told Reed that she should walk away from conflict situations, without distinguishing supervisors from employees, Reed does not argue that such an agreement demonstrates that it was reasonable for her to walk away from supervisors. Reed must put forward some evidence demonstrating that it was reasonable to require LePage to permit her to walk away from supervisors.

7. Arguably, Reed's proposed accommodation is unreasonable *per se.* Allowing an employee to decide when to ignore her supervisors—like tolerating criminal conduct or actual threats to the safety of self or others—would raise a host of concerns over worker safety, let alone the operation of an efficient workplace. I do not need to decide that allowing employees to walk away from their supervisors is *per se* unreasonable, however, because

8. I am aware of *Erickson v. Board of Governors of State Colleges,* 1997 WL 548030 (N.D.Ill. Sept.2, 1997). There, the court held that "when confronted with her insubordinate outburst the University had a responsibility under the ADA to take the small step of sitting down and talking about the situation, assuming the outburst was known to be a product of Plaintiff's disability." *Id.* at *6. Apparently, the employer in *Erickson* never offered to sit down with the employee to discuss her situation, either before or after the outburst, and indeed never offered or discussed any form of accommodation. Since employers should take part in a flexible, interactive process to determine an appropriate accommodation, *see* 29 C.F.R. pt. 1630 app., § 1630.9, and since the Seventh Circuit had stated that employers must meet employees with mental disabilities "half-way" in this process, *see Bultemeyer v. Fort Wayne Community Schs.,* 100 F.3d 1281, 1285 (7th Cir.1996), the court denied the employer's motion for summary judgment because it was unclear whether the employer knew that her insubordination was the result of her disability. *See id.* at *7.

*Erickson* is distinguishable from the case before me. In *Erickson,* the parties had never discussed any accommodation, and the question was whether the employer should have had such a discussion. Although the employee in *Erickson* asserted a failure-to-accommodate claim, I do not regard the issue in that case as whether her proposed accommoda-

## CONCLUSION

Having concluded that Reed has failed to put forward evidence demonstrating that her proposed accommodation is reasonable, I GRANT summary judgment to LePage.

**SO ORDERED.**

tion was reasonable-there was no proposed accommodation-but whether her employer needed to engage her in a discussion regarding the appropriate accommodation. LePage, on the other hand, knew of Reed's troubles,

discussed Reed's need for accommodation with her, and arrived at some form of an accommodation. Unlike *Erickson*, this case involves the issue of whether the accommodation the employee requested was reasonable.